# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

RECEIVED

2006 AUG 24  A 9: 24

|  |  |  |
|---|---|---|
| STEVE HAMILTON, AS ADMINISTRATOR OF THE ESTATE OF JOSEPH HAMILTON, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO.: 2:06CV759-LES |
| v. | ) ) | JURY TRIAL DEMANDED |
| PACTIV CORPORATION and LOUISIANA-PACIFIC CORPORATION, | ) ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT FOR WRONGFUL DEATH

### JURISDICTION

1.    Plaintiff is a citizen of the States of Alabama and Plaintiff files this as a wrongful death action for the deaths of Plaintiff's decedent who was a resident of the State of Alabama during his lifetime and at the time of his death, and Defendants are corporations incorporated under the laws of the State of Delaware. PACTIV Corporation's principal place of business is in the State of Illinois, and Louisiana-Pacific Corporation's principal place of business is in the State of Oregon or the State of Tennessee. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332. This Court has jurisdiction based upon diversity of citizenship and amount.

## VENUE

2.     Venue of this action is proper in the United States Federal District Court for the Middle District of Alabama, because many of the wrongful acts which caused the Plaintiff's decedent's injuries and damages occurred in Covington County, Alabama, and because the Plaintiff's decedent was injured in Covington County, Alabama.

## DEFENDANTS

3.     PACTIV Corporation does business by agent in the State of Alabama and may be served through its attorney of record, Bernard Taylor at Alston & Bird, 1201 W. Peachtree Street, Atlanta, GA 30309.

4.     Louisiana-Pacific Corporation does business by agent in the State of Alabama and may be served by service on its attorney of record John Berghoff, Jr., at Mayer, Brown, Rowe & Maw, LLP, 71 South Wacker Drive, Chicago, IL 60606.

## PLAINTIFF

5.     The Plaintiff, Steve Hamilton, is the administrator of the Estate of Joseph Hamilton, deceased, who resided in Covington County, Alabama, and died on September 7, 2005.

<u>**BACKGROUND**</u>

6.     Plaintiff makes claims for the wrongful death of his decedent who suffered injuries and damages, which proximately caused his death caused by exposure to toxic chemicals and hazardous wastes which were released into the environment from a wood treatment facility formerly owned and operated by the Defendants in Covington County, Alabama.

7.     The facility is located between the towns of Lockhart and Florala, Alabama, on a site formerly occupied by Lockhart Lumber Company, a predecessor to PACTIV Corporation.

8.     Emissions of hazardous substances by Defendants and/or their predecessor corporations into the environment proximately contributed to cause his decedent's injuries and damages that resulted in his death.

9.     Plaintiff's decedent resided in the Florala/Lockhart community for a period of time or Plaintiff's decedent was present at other homes, businesses, places of employment, churches and/or schools in the Florala/Lockhart area.

10.     PACTIV Corporation or its predecessor began operation of the facility in the late 1950's and engaged in the business of treating lumber and pine wood poles with creosote, pentachlorophenol and CCA (chromium, copper and arsenic).

3

11.    Energy for the Defendants' wood treatment operation was partly obtained by burning waste wood and bark in three boilers, which were used to create steam and provide heat and energy for the sawmill and wood treatment operation.

12.    The boilers used by Defendants were not licensed as hazardous substance or toxic waste incinerators.

13.    The boilers used by Defendants were not designed or intended to be used as hazardous substance or toxic waste incinerators.

14.    The boilers used by Defendants at the facility would not have safely disposed of hazardous substances or toxic waste burned in them.

15.    The boilers used by Defendants were not licensed as dioxin/furan compounds incinerators.

16.    The boilers used by Defendants were not designed or intended to be used as dioxin/furan compound incinerators.

17.    The boilers used by Defendants at the facility would not have safely disposed of dioxin/furan compounds waste burned in them.

18.    The boilers used by Defendants were not licensed as arsenic compounds incinerators.

4

19.    The boilers used by Defendants were not designed or intended to be used as arsenic compounds incinerators.

20.    The boilers used by Defendants at the facility would not have safely disposed of arsenic compounds burned in them.

21.    The boilers used by Defendants were not licensed as hexavalent chromium compounds incinerators.

22.    The boilers used by Defendants were not designed or intended to be used as hexavalent chromium compounds incinerators.

23.    The boilers used by Defendants at the facility would not have safely disposed of hexavalent chromium compounds burned in them.

24.    The boilers used by Defendants were not licensed as pentachlorophenol compounds incinerators.

25.    The boilers used by Defendants were not designed or intended to be used as pentachlorophenol compounds incinerators.

26.    The boilers used by Defendants at the facility would not have safely disposed of pentachlorophenol compounds burned in them.

27.    The facility also operated a teepee burner, which was used to burn waste or scrap wood. Use of the teepee burner was discontinued by PACTIV on or about February 21, 1980.

5

28.    The Secretary of Health and Human Services maintains a list of substances known to be carcinogens, or which may be reasonably anticipated to be carcinogens.

29.    The Administrator of the Environmental Protection Agency, in cooperation with the Agency for Toxic Substances and Disease Registry and the National Toxicology Program, identifies a list of those hazardous wastes, which are carcinogens, mutagens, teratogens, or endanger human health.

30.    The United States Environmental Protection Agency, Office of Pesticides Program, also maintains a list of chemicals evaluated for carcinogenic properties.

31.    The Secretary of Health and Human Services and the United States Environmental Protection Agency lists creosote as a probable human carcinogen.

32.    Creosote is a mixture of chemicals and is probably carcinogenic to humans.

33.    The creosote mixture used by the Defendants at their Florala/Lockhart facility contained chemicals, which are known to cause cancer.

34.    The creosote mixture used by the Defendants at their Florala/Lockhart facility contained chemicals, which are believed to cause cancer.

6

35.    The Secretary of Health and Human Services and the United States Environmental Protection Agency lists pentachlorophenol as a probable human carcinogen.

36.    Pentachlorophenol is probably carcinogenic to humans.

37.    The pentachlorophenol used by Defendants for wood treatment at the subject wood treatment facility was also contaminated with dioxin/furans.

38.    Dioxin and/or dioxin/furans contaminates in pentachlorophenol used at the facility included 2,3,7,8-tetrachlorodibenzo-p-dioxins, other tetra-chlorodibenzo-p-dioxins, pentachlorodibenzo-p-dioxins, hexachlorodibenzo-p-dioxins, heptachlorodibenzo-p-dioxins, tetrachlorodibenzo-furans, pentochloro-dibenzo-furans, hexachlorodibenzo-furans, heptachlorodibenzo-furans, octachloro-dibenzo-furans and optachlorodibenzo-p-dioxins.

39.    The pentachlorophenol used by Defendants at the Florala/Lockhart facility contained chemicals, which are known to cause cancer.

40.    The creosote used for wood treatment at the wood treatment facility by Defendants was contaminated with polycyclic aromatic hydrocarbons (PAHs).

41.    The creosote or wood treatment chemicals used by Defendants at the wood treatment facility was further contaminated with or contained benzene.

7

42.    The Secretary of Health and Human Services and United States Environmental Protection Agency lists Benzene as a known human carcinogen.

43.    The wood treatment chemicals used by Defendants at the subject wood treatment facility also were contaminated with or contained other chemicals which are generally scientifically recognized to be human carcinogens, to cause birth defects, or to be accelerants and promoters of cancer in humans.

44.    The Defendants also made use of cooling tower corrosion inhibitors, which contained hexavalent chromium and after 1985, made use of wood treatment chemicals, which contained hexavalent chromium.

45.    The Secretary of Health and Human Services and United States Environmental Protection Agency list chromium (VI) as a known human carcinogen.

46.    The wood treatment operation employed by Defendants created or generated waste water when treatment chemicals in a pressurized treatment cylinder replaced water in wood products or "retort."

47.    The wastewater created or generated by Defendants was contaminated with toxic or hazardous chemicals from the treatment chemicals.

48.    The Defendants further operated or maintained water evaporation and containment areas, or lagoons.

8

49.    The Defendants PACTIV and L-P engaged in the air disposal of toxic waste water by maintaining a spray field of spray nozzles which sprayed toxic waste water into the air over disposal lagoons.

50.    Defendants illegally burned toxic and hazardous wastes from their lagoons and waste disposal pits.

51.    Beginning November 1983, Louisiana-Pacific Corporation (herein referred to as "L-P") began ownership and operation of the subject wood treatment facility.

52.    L-P continued operating the facility with the same local management in the same manner as PACTIV.

53.    Within a year after L-P began operation of the facility they began using another wood treatment chemical, which contained copper, arsenic and chromium (CCA).

54.    In addition to the toxic waste that it created, L-P assumed responsibility to dispose of toxic or hazardous waste left at the facility by PACTIV.

55.    The Secretary of Health and Human Services and the United States Environmental Protection Agency lists arsenic as a known human carcinogen.

56.    Arsenic is known to cause cancer in humans.

9

57.    During its term of operation, the Defendant PACTIV sprayed toxic waste into the air.

58.    During its term of operation, the Defendant PACTIV placed toxic wastes in its boiler and engaged in the burning of toxic waste.

59.    During the term of its operation, L-P sprayed toxic wastewater into the air.

60.    During the term of its operation L-P placed toxic wastes in its boiler and engaged in the burning of toxic waste.

61.    The Defendant PACTIV further burned toxic sludge from their toxic waste containment lagoon by putting it in the boilers.

62.    The Defendant L-P further burned toxic sludge from their toxic waste containment lagoon by putting it in the boilers.

63.    Defendants engaged in the burning of hazardous wastes, which were contaminated with known human carcinogens or with probable human carcinogens and toxic waste.

64.    The Defendants also used sawdust to filter and contain hazardous wastes from the wood treatment solutions and their wastewater.

65.    The sawdust used by Defendants was, at times, contaminated with creosote.

10

66. The sawdust used by Defendants was, at times, contaminated with pentachlorophenol.

67. The sawdust used by Defendants was, at times, contaminated with dioxin/furan compounds.

68. The sawdust used by Defendants was, at times, contaminated with PAH's.

69. The sawdust used for containment by L-P was further contaminated with arsenic.

70. The sawdust filter material used to filter wastes by Defendants was burned in the operation boilers.

71. Defendants engaged in the nocturnal and weekend discharge and/or burning of toxic and hazardous wastes.

72. Weekend or nocturnal burning was less likely to be detected by regulators or noticed by the community.

73. Defendants sprayed toxic waste into the air, which was contaminated with known human carcinogens or probable human carcinogens.

74. Certain chemicals of concern were utilized, discharged, disposed, emitted, or otherwise released into the local environment by Defendants at the wood preserving facility.

11

75.    The groups of chemicals utilized, discharged, disposed, or otherwise released by Defendants included, but are not limited to, coal-tar creosote, pentachlorophenol, cooling tower corrosion inhibitors, metals, arsenic, furans and dioxins, as well as particulates containing metallic ions and poly-cyclic aromatic hydrocarbons (PAHs).

76.    The physical forms of these chemicals to which Plaintiff's decedent was exposed include off-site migration of wood preservative liquids, waste liquids resulting from wood treatment processes at the facility, off-site migration of particulates, off-site migrations of vapors and gases of chemicals of concern at elevated temperatures, off-site migration of products and by-products of combustion resulting from on-site fires and burning operations and the off-site migration of aerosol droplets containing dissolved concentration of the above referenced chemicals of concern from a variety of on-site process operations.

77.    The Defendant PACTIV released or caused to be released toxic or hazardous chemicals into the adjacent streams or ditches and thus discharged hazardous toxic chemicals.

78.    The Defendant L-P caused or allowed the discharge of hazardous chemicals and toxic waste by discharge into adjacent streams or ditches.

12

79.    Groundwater at the facility has been contaminated by toxic and hazardous wastes.

80.    Groundwater at the facility, which is contaminated by toxic and hazardous wastes, has migrated off-site.

81.    The Defendants released toxic chemicals into the local atmosphere as a result of wood treatment operations and by drips, spills, leaks, cooling tower discharges and accidents in their waste disposal practices.

82.    The Defendants engaged in the discharge of toxic waste fluids.

83.    The Defendants allowed the discharge of toxic chemical vapors, particulates and aerosols into the air.

84.    The day-to-day operations of Defendants' wood treatment process resulted in the discharge of toxic waste, hazardous substances and known or probable human carcinogens.

85.    Defendants used toxic wastes to make roadways on the facility and scattered it about.

86.    Waste ashes from the facility boilers contained substances listed by EPA as human carcinogens or probable human carcinogens or likely human carcinogens.

87.    Ashes from the boilers were dumped on the facility property.

13

88.    Toxic chemicals and toxic boiler ashes spread over the facility and contributed to toxic dust, which was subject to wind transportation.

89.    PACTIV did not adequately train their employees, management or personnel and did not inform their management, employees or personnel of the dangers associated with the chemicals used in their wood treatment facility or operation.

90.    L-P did not adequately train their employees, management or personnel and did not inform their management, employees or personnel of the dangers associated with the chemicals used in their wood treatment facility or operation.

91.    Defendant PACTIV was aware of the hazardous nature of pentachlorophenol, creosote and the chemical constituents contained therein.

92.    Defendant L-P was aware of the hazardous nature of pentachlorophenol, creosote, CCA and the chemical constituents contained therein.

93.    Both PACTIV and L-P were aware of the hazardous nature of the air emissions as well as the hazardous nature of the waste that was being disposed into ditches and creeks.

14

94.    Both PACTIV and L-P were aware of the hazardous nature of the air emissions as well as the hazardous nature of the boiler ash that was being disposed into ditches and creeks.

95.    The Defendant PACTIV sold scrap wood, which contained wood treatment chemicals for use as firewood in neighboring homes.

96.    The Defendant L-P sold scrap wood, which contained wood treatment chemicals for use as firewood in neighboring homes.

97.    Pentachlorophenol, creosote, pentachlorophenol constituents, creosote constituents, CCA, CCA constituents, benzene, PAHs and dioxin/furans and pesticides used as wood treatment chemicals have been identified as causing serious and permanent health problems, including, but not limited to, various types of cancer, lung cancer, breast cancer, bone cancer, kidney cancer, liver cancer, Scleroderma, leukemia, sarcoidosis, gastrointestinal problems, hematological problems, neurological problems, lupus, kidney problems, female reproductive organ disease, reproductive problems, eye disease, skin disease, respiratory disease, sinus problems, coughing, miscarriages, premature births and birth defects.

98.    At all times pertinent hereto, Defendants knew or should have known that the treatment process at the subject wood treatment facility utilized materials

which had been identified as hazardous or toxic chemicals and that they presented a danger to human health.

99.    Defendants were aware of the health risks to nearby residents associated with operation of their wood treatment plant and the toxic chemicals released there from.

100.    In spite of Defendants' knowledge that much of the surrounding neighborhood would be affected by release of toxic chemicals, no information was ever disseminated to the Plaintiff's decedent or to the public.

101.    The Defendants made no effort to warn the Plaintiff's decedent or surrounding neighborhoods or public of the nature of the disease or cancer causing emissions from their facility.

102.    The toxic chemicals emitted by Defendants were persistent when deposited in Plaintiff's decedent's homes and environment so that Plaintiff's decedent continued to be exposed to them even after the time of emission.

103.    Subsequent to 1997, the Defendants have both exercised control of the facility and have both assumed responsibility for environmental remediation of the site.

16

104. There were instances when PACTIV did not comply with Alabama Department of Environmental Management (ADEM) regulations at the Lockhart wood treatment facility.

105. There were instances when PACTIV did not comply with United States Environmental Protection Agency regulations at the Lockhart wood treatment facility.

106. There instances when L-P did not comply with Alabama Department of Environmental Management (ADEM) regulations at the Lockhart wood treatment facility.

107. There were times when L-P did not comply with United States Environmental Protection Agency regulations at the Lockhart wood treatment facility.

108. At all times pertinent hereto, the Defendants PACTIV and L-P by through their agents, servants, employees, or officers operated the wood treatment plant in such a manner as to cause the release of arsenic, pentachlorophenol, dioxin/furans, creosote and their constituents which contained hazardous substances and toxic chemicals.

109. The fact that Plaintiff's decedent was present at homes in various locations in the Florala/Lockhart area caused him to be exposed to toxic chemicals

17

and/or hazardous substances or known or probable human carcinogens which were released or produced at Defendants' wood treatment facility in Lockhart, Alabama.

110. Plaintiff alleges that the exposure to the toxic or hazardous waste originating from the Defendants' wood treatment facility proximately caused Plaintiff's decedent to suffer, which caused his death.

111. Plaintiff's decedent suffered from a disease that is latent and which does not manifest itself until after a lengthy period of time after initial exposure.

112. Plaintiff's decedent did not know and reasonably had no knowledge or way of ascertaining that his disease was caused by toxic chemicals originating from Defendants' wood treatment facility until a time period within two of the years of the date of the filing of this complaint.

113. Plaintiff's decedent further alleges that the Defendants have entered into a tolling agreement and have agreed not to assert the statute of limitations based upon a computation of time which includes any time that accrued during the time defined by the parties' tolling agreement.

114. During the period of time that Defendants operated or controlled the subject facility, Defendants created, stored or disposed of toxic chemicals or hazardous substances or chemicals which were regulated by state and federal law.

18

115.   Defendants were required by law to maintain written records of their disposal of toxic and hazardous chemicals.

116.   Defendants were required by law to maintain written records of their airborne emissions of toxic and hazardous chemicals.

117.   The Plaintiff avers that the Defendants had a duty to make and maintain written records of toxic and hazardous chemical emissions.

118.   Plaintiff avers that the Defendants had a duty under the law to keep records of all toxic and hazardous chemicals, which they stored on their premises.

119.   Plaintiff avers that Defendants were required by law to keep written records of any hazardous waste, which they disposed of either on-site or off-site.

120.   In October 2004, Defendant L-P had actual knowledge of the pending or potential litigation, which would be filed against them by Plaintiff's decedent.

121.   Upon information and belief, Plaintiff avers that with knowledge of claims that would become litigation, Louisiana-Pacific Corporation destroyed or disposed of material evidence and documents.

122.   Plaintiff is entitled to benefit of the substantive law of the State of Alabama, including an inference of Defendants' guilt, culpability or awareness of their liability because of spoliation of evidence.

19

## COUNT ONE

### NEGLIGENCE

123. Defendants had a duty to Plaintiff's decedent since the commencement of their operation and continuing to the date of this lawsuit.

124. Plaintiff's decedent was a foreseeable victim of the dissemination of toxic fumes and toxic waste into the air, soil and water which evaded the properties, homes and community in which Plaintiff's decedent lived for years.

125. The Defendants, their officers, directors, agents and employees knew or should have known with the exercise of reasonable care that their operations emitted toxic and hazardous substances and particulates, or with the exercise of reasonable care should have known that the emissions would injure the health of the persons or public who lived near the Defendants' facility, including the Plaintiff's decedent.

126. At all times pertinent to this lawsuit, the Defendants failed to use due care to avoid injuring the Plaintiff's decedent.

127. The contamination of air surrounding Defendants' facility could have been eliminated or substantially reduced by the exercise of reasonable care and timely installation of effective treatment facility air pollution control devices and other state of the art methods.

128. The Defendants negligent acts or omissions proximately caused Plaintiff's decedent to suffer injuries and damages, which resulted in his death.

129. As a direct and proximate consequence of the negligent acts and omissions of the Defendants, their agents, employees and representatives, Plaintiff's decedent suffered injuries and damages, which resulted in his death.

## COUNT TWO

### RECKLESSNESS

130. The failure of Defendants, their officers, agents and employees to prevent the contamination of air or soil or water in the Florala/Lockhart area was wanton and exhibited a reckless disregard for the lives and health of the Plaintiff's decedent and persons in surrounding neighborhoods.

131. As a direct and proximate result of gross negligence and wanton acts of the Defendants Plaintiff's decedent suffered injuries and damages, which resulted in his death.

132. The Defendants' gross negligence, reckless and wanton acts and their reckless disregard for the safety of the Plaintiff's decedent and the public surrounding their facility entitles the Plaintiff's decedent to punitive damages in order to punish Defendants, to deter Defendants from such conduct in the future and to deter others from engaging in such irresponsible activity.

21

## COUNT THREE

### NEGLIGENCE PER SE

133.   Defendants violated the standards provided by Code of Alabama 22-27-3(e) by burning hazardous wastes without using an approved incinerator meeting temperature requirements and air pollution controls required by law.

134.   Defendants also violated the provisions of the Alabama Hazardous Wastes Management Act (Code of Alabama 22-30-1 thru 24) by disposing of hazardous waste without a permit or in a manner that their permit did not allow.

135.   Defendants violated the provisions of the Alabama Air Pollution Control Act of 1971 (Code of Alabama 22-28-1 thru 23) by violation of the Rules and Regulations of the Alabama Department of Environmental Management and by disconnecting air pollution control devices installed on company wood fired boilers.

136.   The Defendants violated the Alabama Environmental Management Act (Code of Alabama 22-22A-1 thru 6), the Alabama Solid Waste Disposal Act (Code of Alabama 22-27-1 thru 49) and the Alabama Hazardous Waste Management Act (Code of Alabama 22-30-1 thru 24) by burning hazardous waste without a permit, creating a hazardous substance ash dump, by disconnection of temperature and/or pollution control devices and by violating the rules and

regulations of the State of Alabama, including the Alabama Department of Environmental Management Administration Code, by:

a.    violation of Regulation 335-3-3-.05(19)(c) when Defendants failed to meet continuous compliance requirements by burning a different type of waste other than the type waste used to establish boiler operating limits, or

b.    a violation of regulation 335-3-14-.01(1)(b) by operating equipment which issued air contaminates without a permit or in violation of permit, or

c.    a violation of 335-3-4-.02(1)and(2) by allowing hazardous materials which Defendants handled, stored or used to become airborne or migrate off site, or

d.    a violation of 335-14-7-.08 by burning hazardous waste in a wood fired boiler or by operating a boiler without an automatic feed cut-off functioning, or

e.    a violation of 335-14-X by failing to properly train personnel who stored, used or disposed of hazardous wastes, or

f.    a violation of 335-14-5 by disposing of hazardous wastes without permit or in violation of permit requirements, or

23

g.     a violation of 335-14-7-.08 subpart H for use of an industrial boiler to
dispose of hazardous wastes in a manner not allowed or exempted, or

h.     violation of federal rules and regulations adopted by the State of
Alabama.

137.   Defendants violated the requirements and standards of the laws of the
United States, including the Resource Conservation and Recovery Act, the Clean
Air Act, the Clean Water Act, the Solid Waste Disposal Act and the
Comprehensive Environmental Response Compensation and Liability Act.

138.   In particular, the Defendants violated the standards, rules and
regulations of the United States Environmental Protection Agency which were
promulgated pursuant to the above-described public laws and which were
incorporated into the laws and regulations of the State of Alabama.

139.   The Defendants violated the following regulations:

a.     40 C.F.R. 266.102 by operating an individual boiler in a manner that
was not in accordance with permit requirements, or

b.     40 C.F.R. 264.344 by operating a hazardous waste incinerator without
permit and which would not have complied with permit requirements,
or

24

    c.    40 C.F.R. 61.05 by operating a source of hazardous pollutants without permit and in violation of any permit requirements.

140.  Plaintiff avers that Defendants' violations of the laws and regulations of the State of Alabama, the regulations of the State of Alabama which incorporate federal standards, and the regulations of the United States Environmental Protection Agency constitute a violation of a duty intended to prevent harm to persons similar to Plaintiff's decedent and that the Defendants' violations are evidence of a breach of duty to Plaintiff's decedent.

141.  As a proximate consequence of the aforestated negligence per se, Plaintiff's decedent suffered injuries and damages, which resulted in his death.

## COUNT FOUR
### INTENTIONAL TORT

142.  Defendants knowingly and intentionally failed to investigate fully and prevent sources of their off-site air contamination and failed to make any efforts to remediate the same so that injury to the Plaintiff's decedent and other persons was certain or substantially certain.

143.  The Defendants' acts manifest an extreme indifference to human life and created a risk of death or severe disease in persons exposed to the hazardous and toxic wastes of Defendants.

25

144.    Defendants intentionally released toxic and hazardous chemicals into the air in violation of law.

145.    Plaintiff's decedent was a foreseeable victim of Defendants' wrongful acts.

146.    As a direct and proximate consequence of the knowing and intentional acts of Defendants and their agents, servants, employees, or representatives, Plaintiff's decedent suffered injuries and damages, which resulted in his death.

147.    Plaintiff further alleges that the Defendants were aware that the volume of wood treatment and production at the Florala/Lockhart wood treatment facility exceeded the facilities ability to treat and contain toxic wastes. Defendants refused to install and maintain effective pollution control devices because they knew that they would soon cease operations at the facility due to the fact that their lumber operations and the cutting of trees consumed the areas ability to produce merchantable timber.

148.    Defendants did not use proper pollution control devices and disposed of toxic chemicals by burning in order to increase their profits.

149.    The Defendants' knowing and intentional acts in violation of the laws of the State of Alabama entitle the Plaintiff's decedent to receive punitive damages

in order to punish Defendants, to deter the Defendants from such conduct in the future and deter others from engaging in such irresponsible activity.

## COUNT FIVE

### NEGLIGENT FAILURE TO TRAIN AND SUPERVISE

150. Defendants negligently failed to properly train their employees concerning the hazards of the toxic substances, which were used, stored or disposed of at the facility.

151. Defendants negligently failed to properly train their employees on methods of safe handling of the toxic substances used, stored or disposed of at the facility.

152. Defendants negligently made a decision to burn harmful toxic chemicals and hazardous waste in a boiler that was neither designed nor intended to incinerate toxic chemicals. Defendants further carried out the aforesaid negligent decision by negligent day-to-day activities and the burning of hazardous substances in an illegal or improper manner.

153. As a proximate consequence of the Defendants' aforestated negligence, the Plaintiff's decedent was caused to suffer injuries and damages, which caused his death.

## COUNT SIX

### PRODUCTS LIABILITY

154. The Defendants engaged in the sale of firewood to residents and persons in the Florala/Lockhart community.

155. The firewood or wood for use in home or stove fires sold by the Defendants included wood which had been treated with toxic wood treatment chemicals.

156. The wood sold by Defendants was burned by person's homes in the neighboring community in a foreseeable and intended use.

157. The Defendants were engaged in the manufacture and sale and placement of wood and wood products into the stream of commerce for commercial purposes.

158. The firewood sold by Defendants was defective and unreasonably dangerous when burned because it emitted toxic and hazardous waste products into the air.

159. As a proximate consequence, Plaintiff's decedent suffered injuries and damages, which resulted in his death.

## COUNT SEVEN

### FAILURE TO WARN

160.  The Defendants failed to warn the Plaintiff's decedent and members of the public of the dangerous health aspects related to their respective operation and the by-products, air emissions and other toxic emissions that were released. Specifically, Defendants failed to provide the Plaintiff's decedent and other persons similarly situated and the public at large with warnings of dangerous emissions resulting from their industrial wood treatment facility which was within the knowledge or obvious to the Defendants, but not obvious or known to the ordinary person.

161.  The dangers include the fact that the Defendants' operation included emissions which were highly dangerous to the health of persons exposed to them and that they caused or contributed to the development of a wide variety of damages and injuries, including cancer.

162.  The danger also included the toxic air emissions that Defendants caused.

163.  Defendants further failed to provide Plaintiff's decedent and others with knowledge as to what would be a reasonable, safe and sufficient protection, if there were any, to protect the Plaintiff's decedent and others from harm and life

29

threatening injuries as a result of exposure to the Plaintiff's decedent and others by the Defendants' emissions.

164.  The Defendants have negligently and recklessly failed and refused to warn and advise the Plaintiff's decedent and others similarly situated, including the public at large, of the dangers caused by Defendants' past emission of toxic chemicals which the Defendants knew or should have known has endangered the Plaintiff's decedent and others by invading their homes, property, breathing zone, schools and the places that they occupy.

165.  Despite their knowledge that their toxic emissions have contaminated the environment where Plaintiff's decedent lived, even at the present time the Defendants have failed to warn.

166.  Defendants' failure to warn took place before, during and after the Plaintiff's decedent was exposed to Defendants' toxic emissions.

167.  Defendants' breach of duty to warn the Plaintiff's decedent of the dangers proposed by his exposure to Defendants' toxic emissions is a substantial contributing cause to Plaintiff's decedent's injuries and probably resulted in his death.

168.   As a direct and proximate consequence of the acts or omissions and Defendants' failure to warn, Plaintiff's decedent suffered injuries and damages, which resulted in his death.

## COUNT EIGHT

### NUISANCE

169.   The acts and omissions described in this Complaint constitute a NUISANCE.

170.   The Defendants have used their facility in such a manner as to cause hurt and damage to the Plaintiff's decedent.

171.   The nuisance created and maintained by the Defendants has proximately caused injury and damage to each of the Plaintiff's decedent, which resulted in his death.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands judgment against Defendants for punitive damages to be determined by the trier of fact and costs.

W. Eason Mitchell
The Colom Law Firm, LLC
Post Office Box 866
Columbus, MS 39703-0866
Telephone:  662-327-0903
Facsimile:  662-329-4832
emitchell@colom.com

31

Gregory A. Cade
Environmental Litigation Group, PC
3529 Seventh Avenue South
Birmingham, AL 35222
Telephone: 205-328-9200
Facsimile: 205-328-9206
gregc@elglaw.com


**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY**


OF COUNSEL


**COUNSEL FOR THE DEFENDANTS HAVE AGREED TO ACCEPT SERVICE.
PLEASE SERVE DEFENDANTS AT:**

**Attorneys for PACTIV Corporation**
John C. Berghoff, Jr.
Mayer, Brown, Rowe & Maw, LLP
71 South Wacker Drive
Chicago, Illinois 60606

**Attorneys for Louisiana-Pacific Corporation**
Bernard Taylor
Alston & Bird, LLP
1201 West Peachtree Street
Atlanta Georgia 30309-3424